**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERISOURCEBERGEN CORPORATION,
　　　　　*Plaintiff-Appellant,*

　　　　　v.

DONALD R. RODEN,
　　　　　*Defendant-Appellee.*

No. 05-55349

D.C. No.
CV-04-01061-AHS

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
February 5, 2007—Pasadena, California

Filed August 13, 2007

Before: Warren J. Ferguson, Eugene E. Siler, Jr.,* and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins;
Concurrence by Judge Ferguson

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

## COUNSEL

Gordon E. Krischer (argued) and Larry A. Walraven (briefed), O'Melveny & Myers, Newport Beach, California, for the plaintiff-appellant.

William E. Johnson (briefed and argued), Law Offices of Richard E. Hodge, Inc., Malibu, California, for the defendant-appellee.

## OPINION

HAWKINS, Circuit Judge:

We explore once again the sometimes complex relationship between state and federal civil proceedings when parties in the midst of litigation on one side of the divide file factually related proceedings on the other. Understandably concerned with judicial economy and respect for ongoing state proceedings, the district court dismissed the federal suit under the *Younger* abstention doctrine. Determining that abstention was

not required, we return the matter to district court to allow appellant's diversity action to proceed.

## FACTS AND PROCEDURAL HISTORY

In 1995, Donald R. Roden ("Roden") was hired as President and Chief Operating Officer of Bergen Brunswig Corporation ("BBC"), the predecessor company to AmerisourceBergen Corporation ("ABC"). At this time, Roden and BBC entered into an employment agreement (the "Agreement") providing that Roden would have his employment with BBC consistently extended monthly on a rolling three-year basis[1] and would not be fired except for "cause," as defined in the Agreement. Additionally, the Agreement provided that Roden was entitled to participate in BBC's ERISA-governed[2] Supplemental Executive Retirement Plan (the "SERP"), as well as its interest-free loan program (the "Loan Program").

Four years after he was hired and two years after being promoted to Chief Executive Officer ("CEO"), Roden was given written notice of BBC's intention to terminate his employment for a reason that apparently did not qualify as "cause" under the Agreement and on terms that may have conflicted with those provided for in the Agreement. Roden thereafter filed a complaint against BBC in the Superior Court in Orange County, California (the "California Superior Court") claiming that BBC breached the Agreement and that Roden was therefore entitled to his full salary for three years past his termination date and was, in all other respects, entitled to be treated as BBC's CEO until that date.[3]

---

[1]In other words, on the first day of Month 1 in Year 1, Roden was guaranteed employment with BBC until the last day of Month 1 in Year 4.

[2]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*.

[3]This case was captioned as *Roden v. BBC* and will be hereinafter referred to by this name.

Specifically, Roden claimed that he was entitled to "esti-
mated future benefits under the SERP . . . of no less than
$8,970,000" and a due date (and interest-accrual start-date)
based on a November 30, 2002 termination date for the
$337,500 loan he took out under the Loan Program.[4]

Shortly thereafter, Roden and BBC entered into a Settle-
ment Agreement, and a judgment incorporating its terms was
entered on July 27, 2000 ("the Judgment"), as follows:

> 1. In favor of [Roden] in the amount of
>    $5,000,000, less legally required deductions;
>
> 2. Continuation of the benefits provided in Sec-
>    tions 5(d) [which includes participation in the
>    SERP], (e) and (i) [which includes participation
>    in the Loan Program] of [Roden's] employment
>    contract; and
>
> 3. Reasonable attorney's fees and costs in an
>    amount to be determined by the Court.

Believing BBC had not fully complied with this Judgment,
Roden sought to force compliance in California Superior
Court. After briefing and argument, that court ordered imple-
mentation of the Judgment ("First Order") finding, in relevant
part, that Roden's entitlement to benefits under the SERP had
"vested" and that "Roden's $337,500 loan was not absolved
by the Judgment" but would not become due until November
30, 2002. The First Order continued (emphasis added):

> [BBC] is required to accord Roden the same treat-
> ment as the other senior officers of [BBC] who
> received loans from this November 1998 loan pro-

---

[4]Roden brought a number of other claims against BBC and sought dam-
ages in the millions of dollars; the above are only the demands relevant
to this appeal.

> gram . . . with respect to . . . any *forgiveness*, extensions, payment of interest and the like.

BBC appealed the First Order to the California Court of Appeal, which unanimously affirmed. 107 Cal. App. 4th 620 (2003).

When Roden attempted to enforce the First Order and collect his SERP benefits, BBC opposed his request, claiming that Roden was entitled to a lesser sum under the SERP plan than he had alleged. Roden appealed this determination pursuant to company policy, and the final administrative review of the matter yielded a decision that Roden was entitled to $1,898,066 in SERP benefits. Apparently with an aim of pursuing his rights under ERISA—which allows an ERISA plan beneficiary to pursue court action if he is dissatisfied with an administrative determination of his ERISA benefits, 29 U.S.C. §§ 1132(a), 1133—Roden requested discovery from ABC (which, by this point, had stepped into BBC's shoes) regarding the amount of benefits he was entitled to receive under the SERP.

At this point, ABC sought to remove *Roden v. BBC* from the California courts to federal court claiming that Roden's discovery request had "transformed" the case into an ERISA action, which is removable to federal court at the defendant's request. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). The district court rejected this argument and remanded the case back to the California courts.[5]

Undeterred, ABC filed its own action in federal district court, requesting both a judgment that Roden breached his contract with ABC by failing to repay his $337,500 loan

---

[5]It surely did not pass the district court's notice that ABC was attempting this maneuver after several years of litigation in the state court system, most of which had yielded unfavorable results for ABC and its predecessor corporation.

("Count I"), as well as a declaration of ABC's duties and obligations to Roden under the SERP—namely, for a proper calculation of Roden's SERP benefits ("Count II"). The district court dismissed ABC's two claims,[6] relying on the basic premise that resolving ABC's claims at the federal level would interfere with ongoing state court proceedings regarding almost-entirely overlapping issues.[7] ABC appealed to this court, arguing that the district court erred in dismissing its claims.

Shortly before oral argument took place in this case, the California Superior Court entered a second order implementing the Judgment ("Second Order"). The Second Order declared that Roden was entitled to $14,432,141.74 in SERP benefits but was not entitled to any forgiveness of the loans he had taken from ABC under the Loan Program. Both parties have appealed the Second Order to the California Court of Appeal.

In light of these recent developments—which ABC agrees will squarely resolve the issue of Roden's entitlement under the SERP—ABC concedes that the district court was within its discretion to decline to entertain Count II. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdic-

---

[6]Because it dismissed ABC's claims outright, the district court did not reach the issue of whether the federal proceedings should be stayed pending conclusion of the state court proceedings, a remedy Roden requested if his motion to dismiss was denied.

[7]Specifically, the district court dismissed Count I on the basis of the *Younger* abstention doctrine, and dismissed Count II based on three independent grounds: (1) the federal court must abstain under *Younger*; (2) the court should not exercise its discretion to entertain ABC's request for declaratory relief; and (3) ABC failed to state a claim because it failed to allege facts sufficient to demonstrate that it qualified as a "fiduciary" of an ERISA-governed plan. The district court, however, rejected Roden's arguments that dismissal of both counts was required by the Anti-Injunction Act, 28 U.S.C. § 2283, and the *Rooker-Feldman* doctrine, as well as his argument that dismissal of Count II was required under the removal statute, 28 U.S.C. § 1446(b).

tion, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party . . . ." (emphasis added)); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."). We are thus called upon to decide *only* whether the district court properly dismissed Count I.

## DISCUSSION

If the district court had the same discretion to decline to hear claims for monetary damages as it does to decline to hear claims for declaratory relief, we would surely uphold the dismissal of Count I. Parties should be strongly discouraged from attempting to drag federal courts into disputes already significantly underway in state courts.

Moreover, we regret the significant expense—both to the parties and to the two already overburdened court systems—caused by ABC's decision to file its state-law-governed breach of contract claim in federal court when it could have just as easily filed the very same claim in the California courts, which have been competently handling these matters for over six years.

Nevertheless, we are aware of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and must decide whether the district court properly understood the scope of this obligation when it dismissed Count I under the doctrine announced in *Younger v. Harris*, 401 U.S. 37, 41 (1971). We conclude that it did not and that Count I was improperly dismissed under *Younger*. We also conclude that dismissal of Count I cannot be affirmed under either the Anti-Injunction Act, 28 U.S.C. § 2283, or the *Rooker-Feldman* doctrine. We therefore

reverse the dismissal of Count I and remand to the district court for further proceedings.

## I. *Younger* Abstention

**[1]** The *Younger* abstention doctrine, as originally articulated by the Supreme Court, "forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings." *Younger*, 401 U.S. at 41. Roden argues that allowing ABC's breach of contract claim to proceed in federal court would be the functional equivalent of enjoining the ongoing post-judgment proceedings in *Roden v. BBC* and, thus, that the *Younger* doctrine required the federal court to abstain from considering, and thereby dismiss, Count I.

**[2]** ABC counters that, although its breach of contract claim may create a *potential* for conflict with the enforcement of a *single* state court judgment, this is an insufficient basis for federal court abstention under *Younger*. Specifically, ABC argues that the district court incorrectly stated the *Younger* doctrine's elements and improperly expanded the "important state interest" and "conflict" elements to encompass *minimal* state interests and *potential* conflicts. After reviewing the district court's dismissal de novo, *see Gilbertson v. Albright*, 381 F.3d 965, 982 n.19 (9th Cir. 2004) (en banc), we agree and hold that the district court had a "duty . . . to adjudicate [the] controversy properly before it," *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984), even if "adjudicating" this particular controversy would have amounted to little more than a ministerial entry of judgment based on the collateral estoppel effects of decisions already made by the California courts.

### A. *Abstention and the* Younger *Elements*

The district court dismissed Count I after concluding that "[o]n balance, it appears that all three elements of *Younger* abstention are met."

**[3]** However, when a federal plaintiff seeks monetary damages (rather than injunctive or declaratory relief) in a case requiring abstention under *Younger*, *dismissal* is not the appropriate procedural remedy. *See Gilbertson*, 381 F.3d at 968. As the *Gilbertson* court held, although "*Younger* principles apply to actions at law as well as for injunctive or declaratory relief . . . , federal courts should not dismiss actions where damages are at issue; rather, damages actions should be *stayed* until the state proceedings are completed." *Id.* (emphasis added). Accordingly, even if abstention under *Younger* were required as to Count I, the district court should have stayed ABC's federal suit pending the conclusion of *Roden v. BBC* in the California court system, rather than dismissing Count I altogether.

In addition, *balancing* the *Younger* elements, rather than determining whether each element, on its own, is satisfied, conflicts with the requirement that federal courts abstain only in those cases falling within the "carefully defined" boundaries of federal abstention doctrines. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*"). As virtually all cases discussing these doctrines emphasize, the "limited circumstances in which . . . abstention by federal courts is appropriate . . . 'remain the exception rather than the rule,' " *Green v. City of Tucson*, 255 F.3d 1086, 1089 (9th Cir. 2001) (en banc) (quoting *NOPSI*, 491 U.S. at 359), *rev'd on other grounds by Gilbertson*, 381 F.3d at 968-69, and, thus, when each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431-34, 437 (1982) (abstaining only after determining that each element of *Younger* doctrine was satisfied); *NOPSI*, 491 U.S. at 372-73 (not abstaining when one element of *Younger* doctrine was not satisfied).

Finally, there are actually *four* elements that must be satisfied before the *Younger* doctrine requires abstention. The dis-

trict court recognized only *three* of them, apparently taking cues from a number of our cases that have focused on only the three "*Middlesex* elements"**8** and agreeing with Roden that, to the extent a fourth element ever existed, this court's en banc decision in *Gilbertson* did away with it. *See Gilbertson*, 381 F.3d at 968-69 (en banc) ("[W]e recede from our statements in *Green v. City of Tucson*, 255 F.3d 1086, 1098, 1102 (9th Cir. 2001) (en banc), that direct interference is a threshold requirement, or element, of *Younger* abstention . . . ." )). According to the district court, abstention is required whenever "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims," *Meredith v. Oregon*, 321 F.3d 807, 817 (9th Cir. 2003) (citing *Middlesex*, 457 U.S. at 432), *even if* the federal action does not enjoin the ongoing state court proceedings or have the practical effect of doing so.

**[4]** This is incorrect. As *Gilbertson* makes clear, while there are only three "threshold elements" to application of *Younger*, there is a vital and indispensable fourth element: the policies behind the *Younger* doctrine must be implicated by the actions requested of the federal court. In the language of the *Gilbertson* court:

> *If* a state-initiated proceeding is ongoing, and *if* it implicates important state interests . . . , and *if* the federal litigant is not barred from litigating federal constitutional issues in that proceeding, *then* a federal court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that *Younger* disapproves.

---

**8***See, e.g.*, *Canatella v. California*, 404 F.3d 1106, 1109-10 (9th Cir. 2005); *Green*, 255 F.3d at 1091; *Commc'ns Telesystems Int'l. v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1015 (9th Cir. 1999); *Woodfeathers, Inc. v. Washington County, Or.*, 180 F.3d 1017, 1020 (9th Cir. 1999); *Partington v. Gedan*, 880 F.2d 116, 121 (9th Cir. 1989).

381 F.3d at 978 (emphases in original). Thus, once the three *Middlesex* elements are satisfied, the court does not automatically abstain, but abstains only if there is a *Younger*-based *reason* to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings. *Id.*[9]

[5] Accordingly, abstaining under *Younger* as to Count I was proper *only* if all four *Younger* requirements were strictly satisfied. ABC concedes the first and third threshold elements, and we agree they were both met here: the post-judgment proceedings in *Roden v. BBC* were ongoing, and ABC had an opportunity to raise its federal claims in these state court proceedings.[10] As to the second threshold element and the fourth element, however, we find that they were *not* met here and, thus, that *Younger* abstention was improper in this case.

### B.  Younger *Abstention Improper Because No Important State Interest Implicated*

The second threshold element of *Younger* is satisfied when "the State's interests in the [ongoing] proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National

---

[9]As to Roden's contention that *Gilbertson* did away with the fourth element, *Gilbertson* did overrule *Green*'s holding that " '*direct* interference' is a threshold requirement . . . of *Younger* abstention," 381 F.3d at 968-69 (emphasis added), but it left intact the more general requirement that *some* interference with state court proceedings is a necessary—and, indeed, motivating—element of the *Younger* doctrine, *see id.* at 976 ("There is no doubt that interference with state proceedings is at the core of the comity concern that animates *Younger*."); *id.* at 976-77 ("[I]nterference is undoubtedly the reason for *Younger* restraint, or the end result to be avoided. However, the Supreme Court has never required that interference be 'direct' in the manner we described in *Green*.").

[10]Note that, here, the third element is automatically satisfied because Count I is a state law breach of contract claim and, accordingly, raises no federal questions whatsoever.

Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). The district court reasoned that, because California has an "admittedly . . . important interest in the enforcement of its judgment and orders," and because resolving ABC's breach of contract claim in federal court could potentially create a conflict with the First Order (which partially resolved Roden's obligations under the Loan Program), the second threshold element "weigh[ed] in favor of abstention."[11]

The Supreme Court has noted that states "have important interests in administering certain aspects of their judicial systems," and that, in particular, states have an interest in "enforcing the orders and judgments of their courts." *Pennzoil*, 481 U.S. at 12-13. Taken out of context, these statements suggest that California's interest in enforcing the judgment *in this particular case* is of sufficient importance to meet *Younger*'s second threshold element. But we have made it clear that "[t]he importance of the [state's] interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003); *see also Champion Int'l*, 731F.2d at 1408 ("[A] challenge[ ] [to] only one . . . order, not the whole procedure" is "not a substantial enough interference with [a state's] administrative and judicial processes to justify abstention.").

Accordingly, binding precedent prevents the court from finding that California's interest in enforcing this one particular judgment—as opposed to a state's wholesale interest in preserving its procedure for posting an appeal bond, *see Pennzoil*, 481 U.S. at 12-14, or its interest in retaining a particular contempt of court scheme, *see Juidice v. Vail*, 430 U.S. 327, 330, 335 (1977)—qualifies as sufficiently "important" to satisfy *Younger*'s second threshold element.

---

[11]As discussed above, the district court's decision to balance, or weigh, the *Younger* factors was in error.

Cognizant of this reality, Roden argues that California's interest in adjudicating conflicts in a timely fashion—as evidenced by its express goal of resolving seventy-five percent of civil cases within a year of filing, *see* Cal. Gov't Code § 68603; Cal. Rules of Ct., std. 2.2(f)(1)—should qualify as sufficiently "important" for *Younger* abstention purposes. To support this argument, Roden cites a number of California and federal cases for the basic—and undisputed—proposition that courts have an interest in prompt resolution of the cases on their dockets.

**[6]** While true, this is not the type of "important state interest" that animates the *Younger* abstention doctrine. The goal of *Younger* abstention is to avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures. Roden cites no case, nor could he, holding that federal courts should abstain in favor of state courts when a *universal* judicial interest—such as the prompt resolution of cases—is at stake.[12] Because neither California's interest in enforcement of a single state court judgment nor its interest in judicial efficiency is sufficiently important to satisfy *Younger*'s second threshold element, the district court erred when it found this element satisfied.

*C.* Younger *Abstention Improper Because Ongoing State Court Proceedings Would Not Be Actually or Effectively Enjoined*

**[7]** Although we would be obligated to find the district court's decision to abstain under *Younger* erroneous based

---

[12]Moreover, hearing ABC's breach of contract claim in federal court may actually further (rather than detract from) the goal of expeditious case resolution, as there is currently no claim pending in the California Superior Court requiring a determination of Roden's liability under the Loan Program, and there is no means by which the California Superior Court could order Roden to repay ABC (if, in fact, he is legally obligated to do so) based on the claims currently pending before it.

solely on the lack of an important state interest, *see supra* Part I.A, we also think it wise to address the district court's implicit finding that a *potential* conflict with ongoing state court proceedings is sufficient to meet the fourth element of *Younger* abstention.[13] As the Supreme Court has held, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction," much less abdicating it entirely. *Colo. River*, 424 U.S. at 816. Rather, abstention is only appropriate in the narrow category of circumstances in which the federal court action would actually "enjoin the [ongoing state] proceeding, or have the practical effect of doing so." *Gilbertson*, 381 F.3d at 978.

[8] Here, deciding Count I would neither enjoin, nor have the practical effect of enjoining, the post-judgment proceedings in California Superior Court; after all, Roden has not yet filed any post-judgment motion in California Superior Court disputing his obligation to repay the loan, and ABC has not yet filed a counterclaim in the state court proceedings attempting to enforce its right to receive repayment. Thus, the district court's finding of an abstention-worthy conflict based on a *potential* for conflict was erroneous.

Roden's counterargument—that the requisite "interference with ongoing state proceedings" occurs whenever the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it— has also been rejected. As explained by this court in *Green*, 255 F.3d at 1097, *rev'd on other grounds by Gilbertson*, 381 F.3d at 968-69:

---

[13]*See AmerisourceBergen Corp. v. Roden*, No. 04-1061 (C.D. Cal. Feb. 1, 2005) (order granting motion to dismiss) ("[Although] the issues in [ABC's] federal complaint are not necessarily coextensive with the state court proceedings, [they are] substantially related to the claims in the state court proceeding [and, thus,] any decision in the federal forum could *potentially* conflict with the state court proceedings.").

> [T]he possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of "exceptional" circumstances, [*Colo. River*, 424 U.S.] at 818, . . . that possibility alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them.

Indeed, the Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42 (1977); *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295-96 (1970). *Kline v. Burke Const. Co.*, 260 U.S. 226 (1922); *see also Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806-07 (9th Cir. 2002). Although abstention to avoid concurrent, duplicative litigation is available in some very limited circumstances—in particular, when the requested relief in federal court is a declaratory judgment, *see Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) —the general rule remains that stated in *Kline*, 260 U.S. at 230:

> Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res [judicata and collateral estoppel] by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.

Thus, as long as the action requested of the federal court—here, issuing an ordinary judgment requiring an individual to pay breach of contract damages—does not enjoin or "have the practical effect of" enjoining the ongoing state court proceedings—here, California's post-judgment proceedings in *Roden v. BBC*—then abstention is not warranted. *See Gilbertson*, 381 F.3d at 978. It is clear to us that retaining jurisdiction over, and proceeding with, Count I would not have enjoined or in any way impeded the ongoing litigation in *Roden v. BBC*. Rather, the *Roden v. BBC* proceedings would have been free to continue simultaneously with the federal suit, and ABC would have simply been bound by the rulings of the California state courts under the doctrine of collateral estoppel to the extent the state courts decided the relevant issues before the federal court did.[14] Concurrent consideration, not abstention, is the solution, and the district court therefore erred in finding that the potential conflict was one the *Younger* doctrine required the court to avoid. *See Colo. River*, 424 U.S. at 817-20.

**[9]** For the reasons discussed above, the district court erred in dismissing Count I on the basis of *Younger* abstention. As the following two sections explain, although this court "may affirm on any basis supported by the record even if the district court did not rely on that basis," Count I cannot be dismissed under either the Anti-Injunction Act, 28 U.S.C. 2283, or the *Rooker-Feldman* doctrine. *United States v. Washington*, 969 F.2d 752, 755 (9th Cir. 1992) (internal quotation marks and citation omitted)).[15]

---

[14]Indeed, since ABC instituted its federal action, the California Superior Court has made a further determination regarding Roden's obligation to repay his $337,500 loan: in its Second Order, the court decided that Roden was not entitled to any loan forgiveness on loans he had taken from ABC under the Loan Program.

[15]Roden also argues that dismissal of Count I should be affirmed either because ABC's filing of its federal complaint was the functional equivalent of an untimely removal under 28 U.S.C. § 1446(b) or because BBC's

## II. Anti-Injunction Act, 28 U.S.C. § 2283

**[10]** The Anti-Injunction Act prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Whereas the *Younger* doctrine has been expanded to prohibit federal courts from issuing an injunction *or its functional equivalent* when doing so would interfere with an ongoing state court proceeding, the plain language of § 2283 speaks *only* to actual injunctions. Count I of ABC's federal complaint does not request an injunction; thus, the Anti-Injunction Act does not require its dismissal.

**[11]** Moreover, even if the statute still applies to certain requests for declaratory relief, *see H.J. Heinz Co. v. Owens*, 189 F.2d 505 (9th Cir. 1951)[16] —a remedy closely related to a formal injunction—it certainly does not apply to requests for money damages that, if granted, would render state court litigation nugatory due to preclusion doctrines. This could arguably be the province of the judicially created *Younger* doctrine, but is certainly not the province of an unambiguous statute that says nothing about the type of relief ABC requests in Count I. Because abstention is improper under *Younger*, it is *a fortiori* improper under the Anti-Injunction Act, and this theory of dismissal is rejected.

counsel orally entered into a "forum selection agreement" during a Superior Court hearing providing that all claims would be heard in the California Superior Court. Both arguments are raised for the first time on appeal; thus, the court will not consider them. *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004).

[16]While the relevant holding of *H.J. Heinz*—that a federal court abuses its discretion under 28 U.S.C. § 2201 to issue a declaratory judgment when doing so would conflict, in principle, with the Anti-Injunction Act—may not be good law now that the *Younger* doctrine has come into existence and essentially supplanted the need for this particular aspect of the *H.J. Heinz* holding, we express no opinion on this matter.

### III. *Rooker-Feldman* Doctrine

**[12]** "The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983). Roden argues that this doctrine prohibits the district court from entertaining ABC's breach of contract action because doing so would effectively reverse the California Superior Court's decision that *it*—not a federal court—would interpret and enforce the original judgment in *Roden v. BBC*.

**[13]** Roden's argument is incorrect and demonstrates a misunderstanding of the *Rooker-Feldman* doctrine. ABC did not ask the district court to interpret or enforce the *Roden v. BBC* judgment, nor did it seek to reverse any of the California Superior Court's decisions; indeed, Count I makes no mention of the state court's Judgment whatsoever. Rather, the most ABC has asked a federal court to do is redress an injury (i.e., its alleged loss of $337,500 plus interest) that the California court has chosen not to redress.[17] As this court recently explained in *Henrichs*, 474 F.3d at 614, "[p]reclusion, not *Rooker-Feldman*, applies when 'a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.' " (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).

**[14]** Thus, *even if* all of ABC's contentions with regard to its breach of contract claim had been resolved adversely to ABC in state court—a scenario belied by the First and Second Orders issued by the California Superior Court, which have

---

[17]In fact, ABC is not even doing this much, as it is content with the substance of the California Superior Court's Judgment and Orders finding Roden's loan due as of November 30, 2002 (First Order) and finding Roden ineligible for any loan forgiveness (Second Order).

both come out in ABC's favor with respect to Roden's obligations under the Loan Program—*Rooker-Feldman* would not bar ABC's federal claim; rather, res judicata or collateral estoppel would. Accordingly, this theory of dismissal is rejected, as well.

## CONCLUSION

It appears that ABC's federal action is an attempt to secure a binding and enforceable court judgment requiring Roden to repay the $337,500 loan previously extended to him by BBC. Although most of the essential issues have already been decided in state court (and thus collateral estoppel will presumably forbid relitigation of these issues in federal court), there is no legal doctrine preventing ABC from asking a federal court—rather than a state court—to enter an enforceable judgment against Roden, if one be appropriate. While ABC offers no explanation for its choice of forum—indeed, it seems that it would have been equally effective, and far more efficient, for ABC to seek a breach of contract judgment in state court—this court is powerless to prevent ABC from exercising its right, as a plaintiff, to choose its forum. Indeed, because dismissal of Count I cannot be justified under *Younger*, the Anti-Injunction Act, or the *Rooker-Feldman* doctrine, the district court's order must be reversed in part, and Count I must be remanded to the district court for further proceedings.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.** Costs on appeal to Appellants.

---

FERGUSON, Circuit Judge, concurring:

This case concerns a district court's efforts to promote judicial economy and counter an apparent attempt at forum-shopping. Despite our appreciation of the district court's posi-

tion and our frustration with the plaintiff's strategy, we are, as the majority explains, forced to reverse the decision below. I write separately to clarify what I understand to be the doctrinal conundrum before us. Ultimately, the problem of duplicative litigation will require legislative redress.

*Younger v. Harris*, 401 U.S. 37, 43-44 (1971), reflects a "longstanding public policy against federal court interference with . . . state functions." I agree with the majority that the principles of *Younger* do not apply to this case, where the only remaining claim in the federal forum concerns collection on a loan. However, in my view, our consideration of the duplicative state and federal proceedings would be incomplete without discussion of *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-19 (1976), which provides the only abstention-like[1] doctrine founded primarily on the interest of judicial economy. *See* James C. Rehnquist, *Taking Comity Seriously: How to Neutralize the Abstention Doctrine*, 46 Stan. L. Rev. 1049, 1092 (1994); Rex E. Lee & Richard G. Wilkins, *An Analysis of Supplemental Jurisdiction and Abstention with Recommendations for Legislative Action*, 1990 BYU L. Rev. 321, 356-57 (1990).

*Colorado River* held that, even where a "case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of wise judicial administration, giving regard to conservation of judicial

[1]Although sometimes referred to as such, the *Colorado River* doctrine is technically not a form of abstention. 424 U.S. at 813 ("We hold that the dismissal cannot be supported under th[e] doctrine [of abstention] in any of its forms."); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (explaining basis of *Colorado River*); *Holder v. Holder*, 305 F.3d 854, 867 n.4 (9th Cir. 2002).

resources and comprehensive disposition of litigation." 424 U.S. at 817 (internal punctuation omitted) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

*Colorado River* enumerated four factors that courts may consider in determining whether "considerations of wise judicial administration" outweigh the duty to exercise federal jurisdiction: (1) whether the state court was the first to assume jurisdiction over a property; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. 424 U.S. 818. In *Moses Cone*, 460 U.S. at 23, the Supreme Court added two more considerations: (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court proceeding can adequately address the rights of the federal plaintiff. Our circuit has also added—and repeatedly emphasized—another factor: (7) whether the exercise of jurisdiction would encourage forum-shopping. *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996); *see, e.g.*, *Holder*, 305 F.3d at 870, 871; *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989).

These factors appear to weigh against the exercise of federal jurisdiction in the case before us, but the Supreme Court's strict interpretation of *Colorado River* makes clear that the current doctrine cannot solve the problem we face. *See Moses Cone*, 460 U.S. at 25-26 ("[W]e emphasize that our task . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."). "The issue . . . is not simply whether state court is a 'better' forum" to resolve the issues pending before the federal court. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). *Colorado River* applies only in "exceptional cases," and such cases are "exceedingly rare." *Smith v. Cent.*

*Ariz. Water Conserv. Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005). "[T]he [general] rule [remains] that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (quotation and internal punctuation omitted). Because the case before the panel presents an ordinary contract dispute, I do not believe that *Colorado River* permits the district court to decline to exercise jurisdiction. *See Travelers Indemn.*, 914 F.2d at 1369 (stay vacated where "ordinary contract and tort issues"); *Neuchatel Swiss Gen'l Ins. Co. v. Luftansa Airlines*, 925 F.2d 1193, 1995 (9th Cir. 1991) (stay vacated where "unexceptional commercial dispute"); *but see Nakash*, 882 F.2d at 1415 (affirming stay in trademark case); *id.* (stating that the language of "exceptional circumstances" and a "virtually unflagging obligation" "somewhat overstates the law").

Nonetheless, I question whether this outcome serves the principles underlying *Colorado River*. The Supreme Court's decision was based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817. I appreciate the strict requirement that federal courts exercise their jurisdiction in federal question jurisdiction cases but am unconvinced of the value of this approach in diversity matters, particularly where a state suit was filed prior to a federal action.

*Colorado River* highlighted the factor of which court was first in time. *Id.* at 818. More recently, *Moses Cone*, 460 U.S. at 23-25, emphasized the significance of whether federal law provides the rule of decision on the merits. In my view, where a nearly identical case is already pending in state court and there is clearly no federal question before the federal court, the latter forum should be permitted to stay its proceeding pending the outcome of the state suit.

The procedural history of the instant matter provides just one example of the problems that remain unresolvable within

our current statutory scheme. Roden filed a state action against AmerisourceBergen's predecessor in 1995. Five years later, after settlement and an appeals process, Amerisource-Bergen attempted to remove the proceeding to federal court, alleging federal question jurisdiction. Finding no federal law claim, the district court remanded the action to the state forum. AmerisourceBergen responded by initiating this federal lawsuit, which the district court then dismissed on the ground of *Younger* abstention.

The timing of these lawsuits makes us particularly sympathetic to the judicial economy concerns prioritized by the district court. I note that we could affirm the district court's decision to defer to the forum where the first suit was filed if that first court had been a federal court. When two cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the second district court to exercise its discretion to transfer, stay, or dismiss the second suit in the interests of efficiency and judicial economy. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

Awkwardly, it is only because the court presiding over Roden's lawsuit is a state court that we do not permit deference to it. Our reason is federal courts' "virtually unflagging obligation to exercise the jurisdiction given them." *Holder*, 305 F.3d at 867 (quoting *Colorado River*, 424 U.S. at 817). In the context of diversity cases such as this one, however, perhaps the obligation should be redefined.

As we recognized almost three decades ago,

> The need for fashioning a flexible response to the issue of concurrent jurisdiction has become more pressing in this day of increasingly crowded federal dockets . . . . [I]ncreasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever con-

sistent with the rights of the parties. A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result.

*Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (quotation and internal punctuation omitted). That rationale applies today with equal, if not greater, force.

The majority is correct that current abstention doctrine mandates a reversal, but this case presents a problem that requires a larger solution. Although the *Colorado River* doctrine does not provide a basis for the dismissal below, its underlying principle of wise judicial administration counsels in favor of permitting a stay. The first-to-file rule, crafted in the interest of judicial economy, allows a federal district court to stay a proceeding where another matter involving the same issues and parties is already pending before a different district court. Similarly, where the first suit was filed in a state court and the second suit is a diversity jurisdiction case with no federal question at issue, I believe the federal court should maintain the discretion to stay its proceeding pending the outcome in the state forum. Absent legislation to that effect, however, I must concur.