703 F.2d 332
 William Eugene MIOFSKY, Appellant,
v.
SUPERIOR COURT OF the STATE OF CALIFORNIA, In and For the
COUNTY OF SACRAMENTO; Elmer Galioni, M.D.; Bruce
Kaldor, M.D.; and Alfred French, M.D., Appellees.
 No. 80-4589.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1982.
Decided Jan. 3, 1983.
 
 James R. Kirby, II, Sacramento, Cal., argued, for appellant; John F. Mounier, Jr. and Denise Jarman Fischer, Hansen, Boyd, Culhane & Mounier, Sacramento, Cal., on the brief.
 Robert B. Fien, Sacramento, Cal., argued, for appellee; Dennis Westerberg, Mills & Westerberg, Sacramento, Cal., on the brief.
 Appeal from the United States District Court for the Eastern District of California.
 Before WISDOM,* MERRILL and NORRIS, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 Appellant, William Eugene Miofsky, brought this civil rights action under 42 U.S.C. Sec. 1983 against the Superior Court of the State of California and three medical doctors who had conducted a psychiatric examination of Miofsky pursuant to court order. Miofsky sought a federal court injunction restraining discovery proceedings in state tort litigation that he claims would violate rights protected by the United States Constitution. The district court denied relief and dismissed the action on the grounds that it lacked subject matter jurisdiction and, alternatively, that the action was barred under principles of res judicata. Our jurisdiction to hear Miofsky's appeal rests on 28 U.S.C. Sec. 1291.
 
 
 2
 * The facts as alleged in Miofsky's complaint may be summarized as follows:[1] Miofsky is a medical doctor who practiced the specialty of anesthesiology from 1962 until his withdrawal from practice in 1979. In that year he pleaded nolo contendere in Sacramento Superior Court to criminal charges that he had committed acts in violation of Section 288 of the California Penal Code.[2] Upon recommendation of the Probation Department, the Superior Court appointed three doctors, appellees Galioni, French, and Kaldor, to conduct a psychiatric examination of Miofsky to determine whether he was a Mentally Disordered Sex Offender (MDSO), defined by California Welfare & Institutions Code Sec. 6300 as any person who, by reason of mental defect, disease, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others. A second purpose of the psychiatric examination was to determine whether Miofsky would benefit from care and treatment in a state hospital, which is a statutory alternative to a sentence in state prison. On the basis of reports prepared by the psychiatrists, the Superior Court determined that Miofsky was an MDSO who could benefit from treatment in a state hospital and ordered him committed for a fixed term of years to Atascadero State Hospital, where Miofsky has remained in custody.
 
 
 3
 Subsequently, Miofsky was named as defendant in numerous civil damage actions filed by 163 surgical patients, each alleging that Miofsky placed his penis in her mouth during surgery. The patients used fictitious names in their civil actions "to secrete the true identity of the plaintiffs from the general community in which they live in order to avoid extreme humiliation, embarrassment, degradation and ridicule...." When plaintiffs scheduled the depositions of the three court-appointed psychiatrists to discover information obtained from Miofsky during the MDSO proceeding, Miofsky moved for a protective order prohibiting the psychiatrists from disclosing any such information on deposition. Upon the denial of this motion by the Superior Court, Miofsky sought appellate review by petitioning for a writ of mandate in the California Court of Appeal and thereafter in the California Supreme Court. After both state appellate courts denied relief, Miofsky filed this Sec. 1983 action in the United States District Court, alleging unconstitutional infringements of privacy interests, the right against compelled self-incrimination, and a right to medical treatment. In his complaint, he prayed for an injunction prohibiting disclosure of the information by deposition testimony or otherwise and "such further relief as the court deems just."
 
 
 4
 Acting sua sponte, the district court dismissed the action for lack of subject matter jurisdiction, reasoning that although Miofsky characterized his federal court suit as a civil rights action brought pursuant to 42 U.S.C. Sec. 1983, he was in reality asking a federal district court to review the Superior Court's denial of his motion for a protective order:
 
 
 5
 As a general rule, it is not the province of lower federal courts to review the appropriateness of civil decisions of a state's highest court. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the United States Supreme Court by writ of certiorari. Atlantic Coastline R. Co. v. Brotherhood of Loc. Eng., 398 U.S. 281, 90 S.Ct. 1739 [26 L.Ed.2d 234] (1970), Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 [68 L.Ed. 362] (1923), Buckley Towers, etc., v. Buchwald, 595 F.2d 253, 254 (5th Cir.1979), Olivares v. Martin, 555 F.2d 1192 (5th Cir.1977), P.I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1st Cir.1972) ....
 
 
 6
 In light of the cases cited herein, it is apparent that the only avenue available to plaintiff in the present case for vindication of his federal constitutional rights is a petition for writ of certiorari addressed to the United States Supreme Court. Accordingly, plaintiff's complaint will be dismissed with prejudice. 28 U.S.C. Sec. 1257(3).
 
 
 7
 In the alternative, the district court based its dismissal on principles of res judicata.
 
 II
 
 8
 The threshold question presented by Miofsky's appeal is whether a federal district court has jurisdiction to entertain an action brought under Sec. 1983 to restrain a state court from conducting litigation in a manner that would allegedly deprive a party of rights guaranteed by the United States Constitution. The question whether subject matter jurisdiction exists is, of course, different from the question whether a federal district court should, in deference to principles of comity and federalism, abstain from exercising its jurisdiction in order to avoid interfering with ongoing state judicial proceedings. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). With that distinction in mind, we address the question whether the district court erred in dismissing, sua sponte, Miofsky's Sec. 1983 action for lack of jurisdiction.
 
 
 9
 Viewed in terms of its practical effect on the litigation in state court, the relief Miofsky seeks may fairly be characterized as federal court review of state court action denying him a protective order. As the district court observed, it is not the province of lower federal courts, as a general rule, to review state court discovery orders; however, the jurisdictional inquiry cannot end there. Miofsky claims that the United States Constitution protects the confidentiality of the information he imparted to the court-appointed psychiatrists and that the Superior Court and the psychiatrists, acting under color of state law, threaten to disclose the information to plaintiffs in civil litigation. If, as Miofsky claims, the Constitution does protect the confidentiality of the information, we know of no ground for exempting from the broad reach of Sec. 1983 actions taken by persons acting under color of state law in judicial proceedings, whether those persons are judges or others appointed by judges to act on behalf of the court.
 
 
 10
 We recognize that, as a general proposition, "state courts shall remain free from interference by federal courts." Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 282, 90 S.Ct. 1739, 1741, 26 L.Ed.2d 234 (1970). That has been Congress's mandate since it first enacted the Anti-Injunction Act in 1793, providing that in federal courts "a writ of injunction [shall not] be granted to stay proceedings in any court of a state." Act of March 2, 1793 Sec. 5, 1 Stat. 335 (current version at 28 U.S.C. Sec. 2283 (1976)). However, civil rights actions under Sec. 1983 are among the exceptions to the Anti-Injunction Act that have been "expressly authorized by Act of Congress," id. See Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Thus, as Mitchum makes clear, Congress has not rendered federal courts impotent in the face of an infringement of constitutional rights by the judicial arm of state government. As the Court said in Mitchum, "[t]he very purpose of Sec. 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' " 407 U.S. at 242, 92 S.Ct. at 2162 (quoting Ex parte Virginia, 100 U.S. 339, 346, 25 L.Ed. 676 (1879) (emphasis added)).
 
 
 11
 In light of Mitchum, we conclude that district courts have subject matter jurisdiction over suits brought under Sec. 1983 even when the state action allegedly violating plaintiff's federally protected rights takes the form of state court proceedings.[3] Accordingly, we hold that the district court erred in dismissing Miofsky's claim for lack of subject matter jurisdiction.[4]
 
 III
 
 12
 As an alternative ground for dismissal, the district court found that Miofsky's civil rights action was barred by res judicata under the general principle that the usual rules of preclusion apply to Sec. 1983 actions brought in federal court. See Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In deciding whether to give preclusive effect to state court decisions in Sec. 1983 actions, federal courts look to the preclusion rules of the state in question. Id. at 96, 101 S.Ct. at 415-16. See also Kremer v. Chemical Construction Corp., 456 U.S. 461, 466, 481-82, 102 S.Ct. 1883, 1889, 1897-98, 72 L.Ed.2d 262 (1982). Thus, the relevant inquiry in the case before us is whether California courts would give preclusive effect to the orders of the California Court of Appeal and the California Supreme Court denying Miofsky's petitions for writ of mandate.
 
 
 13
 Miofsky first raised his claims in a hearing on a contested discovery motion for a protective order. After the Superior Court denied his motion by minute order, Miofsky sought immediate relief from the California Court of Appeal and then from the California Supreme Court by petitioning for a writ of mandate. Both courts denied his petitions without a hearing or explanation. Under California practice, such summary denials of writs of mandate are not ordinarily given preclusive effect. 5 B. Witkin, California Procedure Ch. XII, Sec. 146 (2d ed. 1971). Because an appellate court has the discretion to deny a writ without passing on the merits of a petition, a denial may have preclusive effect only if the "sole possible ground of denial was on the merits or it affirmatively appears that the denial was intended to be on the merits." People v. Medina, 6 Cal.3d 484, 491 n. 6, 492 P.2d 686, 690 n. 6, 99 Cal.Rptr. 630, 634 n. 6 (1972). See Consumers' Lobby Against Monopolies v. Public Utilities Comm'n, 25 Cal.3d 891, 901 n. 3, 603 P.2d 41, 46 n. 3, 160 Cal.Rptr. 124, 129 n. 3, (1979); Hagan v. Superior Court, 57 Cal.2d 767, 770, 371 P.2d 982, 984, 22 Cal.Rptr. 206, 208 (1962). Cf. Richer v. Superior Court, 63 Cal.App.3d 748, 134 Cal.Rptr. 52 (1976) (minute order with stated reasons for decision held to be on merits). Since there is no indication that the California appellate courts intended their summary denials to be decisions on the merits of Miofsky's claims, it was clear error for the district court to dismiss Miofsky's action on principles of res judicata.[5]
 
 IV
 
 14
 As an alternative ground for affirming the district court's dismissal of Miofsky's action, appellees rely on the principles of federalism expressed in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.[6] The Younger doctrine was borne of the concern that federal court injunctions might unduly hamper a state in its prosecution of criminal laws. The doctrine stemmed from the fear that interference with a state criminal prosecution would disrupt the exercise of a basic state function, "prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and Constitution." Id. at 51-52, 91 S.Ct. at 754. Although the Court has not limited application of the Younger doctrine to state criminal proceedings, a review of the civil cases in which the Court has invoked Younger abstention demonstrates that each case shares with criminal proceedings an important state interest.[7] For example, in the first of these cases, Huffman v. Pursue, Ltd., 420 U.S. 592, 603-07, 95 S.Ct. 1200, 1207-09, 43 L.Ed.2d 482 (1975), the Court held that proceedings in a nuisance abatement case were "in aid of the criminal law" and therefore fell within the Younger doctrine. Huffman was followed by decisions requiring abstention in order to avoid interference with a state civil contempt proceeding, Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and a state civil enforcement action brought by the state in its sovereign capacity, Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). In Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court held that federal court intervention was unwarranted when the state temporarily removed children from their parents' home pending the outcome of a civil proceeding initiated by the state to determine whether the children were abused. Most recently, in Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Court held that Younger abstention was necessary to avoid interference with state bar disciplinary procedures. In each of these cases, the state or an agent of the state was a party to the proceeding deemed insulated from federal court intervention.[8] In addition, each of these civil suits bore similarities to criminal proceedings or otherwise implicated state interests vital to the operation of state government. In short, none of these cases authorizes our departure from the traditional distinction between civil and criminal proceedings as originally set forth in Younger. Indeed, in Middlesex, the Court carefully avoided the implication that the Younger doctrine applied indiscriminately to civil proceedings.
 
 
 15
 The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman, supra. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore, supra, 442 U.S., at 426, 99 S.Ct., at 2379.
 
 
 16
 Middlesex, 102 S.Ct. at 2521. Thus, unless "vital state interests" are at stake, federal district courts are not proscribed from interfering with ongoing state civil proceedings when necessary to vindicate federally protected civil rights.
 
 
 17
 In sum, neither Younger nor any of its progeny controls the case now before us.[9] Miofsky does not seek to enjoin state criminal proceedings, "quasi-criminal" proceedings, proceedings in aid of the criminal law, proceedings initiated by the state in its sovereign capacity, or proceedings brought to vindicate a vital state interest. Rather, he invokes the federal district court's jurisdiction under Sec. 1983 to restrain the state judiciary from conducting private tort litigation in a way that allegedly threatens to violate his constitutional rights.
 
 
 18
 In determining whether to expand the Younger doctrine to make it applicable to civil litigation generally, we must bear in mind the fundamental principle that federal courts have an "unflagging obligation" to exercise their jurisdiction. Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir.1980) (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-18, 96 S.Ct. 1236, 1246-1247, 47 L.Ed.2d 483 (1976)). "This obligation is particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. Sec. 1983." 609 F.2d at 1293. Although Younger and its progeny teach us that principles of federalism and comity sometimes offset this obligation to entertain civil rights actions, the doctrine of abstention remains "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (quoted in Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). To extend the Younger doctrine to encompass conventional civil litigation would effectively permit the exception to consume the rule. In addition, we note that such a transformation would drain Mitchum v. Foster of all its vitality by emasculating the exception to the Anti-Injunction Act that Congress created in enacting Sec. 1983. Accordingly, we hold that Miofsky's civil rights action is not subject to the Younger abstention doctrine.
 
 CONCLUSION
 
 19
 In conclusion, the district court has subject matter jurisdiction over Miofsky's claim and should proceed to adjudicate his civil rights action. We recognize, however, that under principles of equity governing the issuance of preliminary injunctions, see, e.g., Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1201 (9th Cir.1980), it may in any case be inappropriate to enjoin the state proceedings at this time. As the record before us stands, it appears that Miofsky may not be faced with an immediate threat of irreparable harm. After Miofsky filed his notice of appeal from the district court judgment dismissing his action, the depositions of the psychiatrists were taken and placed under court seal pursuant to a stipulation of the parties that prohibits disclosure of the contents of the depositions pending further order of the Superior Court. Counsel for Miofsky contemplate filing motions in limine seeking a court order prohibiting the use of the deposition testimony at trial. Unless and until the Superior Court rules adversely to Miofsky on any such motions, Miofsky appears to face no immediate threat of any further invasion of the privacy interests he claims are protected by the Constitution.
 
 
 20
 The judgment below is VACATED, and the cause is REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable John Minor Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 For the limited purpose of reviewing the district court's dismissal of the action, we accept the allegations of the complaint as true
 
 
 [2]
 Section 288 provides:
 Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life.
 
 
 [3]
 Like the district court in Mitchum, see id. 407 U.S. at 228, 92 S.Ct. at 2154-2155, the district court here relied on Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). The Supreme Court noted in Mitchum, however, that the Atlantic Coast Line case did not deal with the "expressly authorized" exception to the Anti-Injunction Act. 407 U.S. at 228, 92 S.Ct. at 2154-55
 
 
 [4]
 We do not decide at this stage of the litigation whether Miofsky's complaint states a cause of action upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In deciding that the district court has subject matter jurisdiction, we determine only that Miofsky's complaint states a colorable claim for relief under Sec. 1983 that is not "wholly insubstantial and frivolous." See Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, 457 U.S. 15, 21, 102 S.Ct. 2202, 2206 n. 6, 73 L.Ed.2d 639 (1982) (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Cf. Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (when Miranda warning not given before defendant submitted to psychiatric examination, admission of psychiatric testimony at sentencing phase of capital murder proceeding violated defendant's privilege against compelled self-incrimination)
 
 
 [5]
 The district court's reliance upon Francisco Enterprises v. Kirby, 482 F.2d 481 (9th Cir.1973), is misplaced. There the Sec. 1983 plaintiff attempted a collateral attack against a final state court judgment; here the state courts of California have made no final determination of Miofsky's constitutional claims
 
 
 [6]
 Because it dismissed the action for lack of subject matter jurisdiction, the district court did not address the Younger question. The parties briefed the issue, however, and the record reveals that Miofsky presented to the district court his argument that the Younger doctrine is inapplicable. We consider the question at this time in the interest of judicial efficiency. See Nixon v. Fitzgerald, --- U.S. ----, 102 S.Ct. 2690, 2698 n. 23, 73 L.Ed.2d 349 (1982). Were we to agree with appellees on the issue, Younger abstention would provide an alternative ground for affirming the district court's dismissal of the action, United States v. County of Humboldt, 628 F.2d 549, 551 (9th Cir.1980); Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1256 (9th Cir.1980), and we may make our determination on any ground fairly presented by the record, Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957)
 
 
 [7]
 It should be noted that under certain circumstances, abstention from intervention in state criminal proceedings is itself inappropriate. Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55. These circumstances obtain where the prosecution is brought in bad faith, id. at 47-49, 91 S.Ct. at 752-53; where a statute is "flagrantly and patently violative of express constitutional prohibitions ...," id. at 53-54, 91 S.Ct. at 754-55 (quoting Watson v. Buck, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)); and where the state forum is biased, Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973)
 
 
 [8]
 In Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the action to which the request for an injunction can be traced was ordinary civil litigation. However, the proceeding the plaintiff sought to enjoin was the state's contempt process. The Court held:
 The contempt power lies at the core of the administration of a State's judicial system. Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal court interference with the State's contempt process is "an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding," Huffman, supra, [420 U.S.] at 604 [95 S.Ct. at 1208].
 Juidice, 430 U.S. at 335-36, 97 S.Ct. at 1217-18 (footnotes and citation omitted). While the contempt process vindicated rights of private litigants, "its purpose is by no means spent upon purely private concerns." Id. at 336 n. 12, 97 S.Ct. at 1217.
 
 
 [9]
 The Supreme Court has expressly reserved the question whether Younger applies to civil cases generally, see Trainor v. Hernandez, 431 U.S. 434, 444 n. 8, 97 S.Ct. 1911, 1918 n. 8, 52 L.Ed.2d 486 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975), and the question is one of first impression in our circuit. Cf. Worldwide Church of God, Inc. v. California, 623 F.2d 613 (9th Cir.) (Younger abstention invoked to avoid impairing enforcement of receivership proceedings brought by state in its sovereign capacity), cert. denied, 449 U.S. 900, 101 S.Ct. 270, 66 L.Ed.2d 130 (1980); Rosenthal v. Carr, 614 F.2d 1219 (9th Cir.) (Younger abstention invoked to avoid intervening in state attorney disciplinary proceedings), cert. denied, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980); Tovar v. Billmeyer, 609 F.2d 1291 (9th Cir.1979) (Younger doctrine improperly informed district court's decision to abstain under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), when Sec. 1983 plaintiffs had initiated a pending state court action based upon the same asserted wrong). The Third Circuit has refused to apply Younger to avoid interfering with routine state civil litigation. See Johnson v. Kelly, 583 F.2d 1242, 1247 (3d Cir.1978) (dismissal under Younger doctrine inappropriate when underlying quiet title actions were initiated by private parties)