**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

POTRERO HILLS LANDFILL, INC.;
BLT ENTERPRISES OF SACRAMENTO,
INC.; BRENTWOOD DISPOSAL
SERVICE, INC.; CONCORD DISPOSAL
SERVICE, INC.; CONTRA COSTA
WASTE SERVICE, INC.; DISCOVERY
BAY DISPOSAL, INC.; OAKLEY
DISPOSAL SERVICE, INC.; PITTSBURG
DISPOSAL AND DEBRIS BOX SERVICE,
INC.; RIO VISTA SANITATION
SERVICE, INC.; WASTE CONNECTIONS,
INC.; WASTE CONNECTIONS OF
CALIFORNIA, INC., DBA El Dorado
Disposal Service; TRASHPROS,
LLC; WEST COAST RECYCLING AND
TRANSFER, INC.,
     *Plaintiffs-Appellants,*

      v.

COUNTY OF SOLANO,
     *Defendant-Appellee,*

SIERRA CLUB; NORTHERN
CALIFORNIA RECYCLING
ASSOCIATION; SPRAWLDEF, AKA
Sustainability, Parks, Recycling
and Wildlife Defense Fund,
    *Defendants-Intervenors-*
      *Appellees.*

No. 10-15229

D.C. No.
2:09-cv-02514-
JAM-JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

17295

Argued and Submitted
April 14, 2011—Pasadena, California

Filed September 13, 2011

Before: Stephen Reinhardt, Michael Daly Hawkins, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

James B. Slaughter, Beveridge and Diamond, Washington, D.C., and Lily N. Chinn, Beveridge and Diamond, San Francisco, California, for the plaintiffs-appellants.

James W. Laughlin, Deputy County Counsel, Fairfield, California, for the defendant-appellee.

Robert S. Perlmutter, Shute, Mihaly & Weinberger, San Francisco, California, for defendant-intervenor-appellee Sierra Club.

John Douglas Moore, Henn, Etzel & Moore, Inc., Oakland, California, for defendant-intervenor-appellee Northern California Recycling Association.

Kelly T. Smith, The Smith Firm, Sacramento, California, for defendant-intervenor-appellee Sustainability, Parks, Recycling and Wildlife Legal Defense Fund.

## OPINION

HAWKINS, Senior Circuit Judge:

Potrero Hills Landfill ("Potrero Hills"), a privately owned solid waste and recycling business in Solano County, California ("the County"), and twenty-two related businesses appeal the dismissal on *Younger*[1] abstention grounds of their 42 U.S.C. § 1983 action for declaratory and injunctive relief

[1]*See Younger v. Harris*, 401 U.S. 37 (1971).

challenging the constitutionality of a voter-enacted county ordinance restricting the import of out-of-county solid waste into Solano County—an ordinance that the County itself believes to be unconstitutional and refuses to enforce. We hold that *Younger* abstention does not apply here. Although private mandamus actions seeking to compel the County to enforce the challenged ordinance were ongoing in state court at the time this case was filed, those state proceedings were brought by private interest groups and therefore did not implicate the state's unique interest in protecting its vital executive function of law enforcement; nor did they implicate the state's unique interests in protecting its vital judicial or legislative functions. Put differently, a federal court's exercise of jurisdiction over Potrero Hills' claim would not interfere with the state's exercise of a basic state function and would not offend the principles of comity and federalism that *Younger* abstention was designed to uphold. Accordingly, we vacate and remand. As part of the remand, we ask the district court to consider whether *Pullman*,[2] rather than *Younger*, abstention might be appropriate.

## FACTS AND PROCEDURAL HISTORY

### I.   Background

In 1984, voters in Solano County ("the County") enacted a ballot initiative, titled "Initiative Ordinance to Protect Solano County's Environment from Excessive Importation of Solid Waste" ("Measure E"), capping the annual amount of solid waste that may be imported into Solano County at 95,000 tons.[3]

---

[2]*See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[3]Section 2 of Measure E provides in relevant part:

> The County of Solano shall not create a policy, adopt a resolution or ordinance, enter into a contract or in any manner allow for the importation of any solid waste . . . which originated or was collected outside the territorial limits of Solano County which will bring the cumulative total amount of such imported solid waste in excess of 95,000 tons per year.

The measure contained no restrictions on the disposal of solid waste generated within the County.

Although the County initially complied with Measure E by including annual waste import limits in its Solid Waste Management Plan, it stopped doing so in 1992, in reliance on a legal opinion issued by the Solano County Counsel concluding that Measure E was likely unconstitutional, in light of two recent Supreme Court decisions striking down similar local waste import restrictions as violative of the dormant Commerce Clause.[4] The Legislative Counsel of California reached the same conclusion in its own legal opinion on the measure. Shortly thereafter, the County approved permit revision applications from each of the two major solid waste facilities located within the County, one of which was Potrero Hills, allowing disposal of increased quantities of solid waste. Although the permits did not explicitly allow importation of more than 95,000 tons of out-of-County solid waste, it authorized a quantity substantially greater than locally generated amounts, thus implicitly permitting the two facilities to violate Measure E.

As a result, Potrero Hills became one of the three largest landfills servicing the San Francisco Bay Area and today

---

[4]The Supreme Court struck down as unconstitutional in violation of the dormant Commerce Clause an Alabama statute imposing a waste disposal fee only on hazardous wastes generated outside the State and disposed of at a commercial facility within the State, but not on hazardous wastes generated within the State. *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 336-37 (1992). The Court also struck down on dormant Commerce Clause grounds a Michigan statute prohibiting private landfill operators from accepting solid waste originating outside the county in which their facilities are located. *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 504 U.S. 353, 361 (1992). The Court held that a county's restrictions on interstate commerce violate the dormant Commerce Clause just as much as does a state's. *Id.* ("[A] State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself.").

receives some 600,000 tons of solid waste annually from jurisdictions outside Solano County, comprising two-thirds of its total waste intake. Projected to reach full capacity by 2011, it sought permission from the County in 2002 to expand its landfill from 320 to 580 acres, which would provide an additional 61.6 million cubic feet (43 million tons) of new capacity ("Expansion Project"). The Solano County Board of Supervisors approved the Expansion Project and certified the project's Final Environmental Impact Report ("EIR").

Several environmental groups opposing the Expansion Project, including Intervenor Northern California Recycling Association ("NCRA"), brought suit in Solano County Superior Court challenging the sufficiency of the EIR pursuant to the California Environmental Quality Act. A revised EIR was produced and approved but was subject to a second suit by environmental groups, including Intervenor Sustainability, Parks, Recycling, and Wildlife Legal Defense Fund ("Wildlife Fund"), who raised Measure E as an additional bar to approval of the Expansion Project. A third EIR was produced and once again approved.

## II.    State Mandamus Petitions

Following final approval of Potrero Hills' Expansion Project, NCRA, Wildlife Fund, and a third environmental group, the Sierra Club, each filed a mandamus action in Solano County Superior Court, all seeking generalized injunctive relief requiring the County to enforce Measure E, two of them naming Potrero Hills as a real party in interest and seeking to overturn the County's approval of the landfill Expansion Project. The three proceedings were consolidated for briefing and hearing on the merits.

## III.   Federal Action

A few weeks after the last state mandamus action was filed, Potrero Hills and twenty-two other plaintiffs involved in the

solid waste and recycling business in either Northern California, Nevada, or Oregon, filed this single-cause action under 42 U.S.C. § 1983 seeking a declaration that Measure E is unconstitutional in violation of the Commerce Clause and an injunction blocking its enforcement. The three state court petitioners intervened ("Intervenors") and moved to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), or in the alternative to abstain from deciding the case under *Younger* and *Pullman*. Potrero Hills opposed the motions to dismiss and was joined by the County in requesting resolution in federal court, as well as by the State of California, which filed an amicus brief.[5] Citing the state's important interests in "enforcement of Measure E, a local ordinance enacted by California voters," and in "enforcement of its local solid waste ordinance," the district court invoked *Younger* abstention and dismissed the suit without reaching Intervenor's alternative arguments for dismissal.[6]

## STANDARD OF REVIEW

We review de novo the district court's decision to abstain

---

[5]The State of California's particular interest in this suit arises from Potrero Hills' role in a 2008 antitrust consent decree negotiated by the California Attorney General and the U.S. Department of Justice. Concerned by the potential anti-competitive effects of a proposed merger between the second and third largest waste hauling and disposal companies in the United States, Allied Waste, Inc. and Republic Services, Inc., respectively, who combined owned all three of the major solid waste landfills in the Bay Area (Keller Canyon in Contra Costa County, Vasco Road in Alameda County, and Potrero Hills in Solano County), the California AG and U.S. Department of Justice entered into a consent decree allowing Allied and Republic to merge only upon the condition that Republic divest Potrero Hills (which was subsequently purchased in April 2009 by Waste Connections, Inc., another major competitor).

[6]The events that transpired subsequent to the district court's dismissal are not relevant to our review of the district court's decision to abstain under *Younger*, which we undertake in light of the facts and circumstances existing at the time the federal action was filed. *See Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc).

under the *Younger* doctrine. *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001) (en banc), *overruled in part on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 976-78 (9th Cir. 2004) (en banc).

## DISCUSSION

The issue before us is not the constitutionality of Measure E but rather only whether the district court properly dismissed the case based on *Younger* abstention, a doctrine that forbids federal courts from unduly interfering with pending state court proceedings that implicate "important state interests." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The district court determined that the ongoing state mandamus proceedings implicate the state's important interests in (1) enforcing a local ordinance enacted by California voters and (2) enforcing a local solid waste ordinance, and that the remaining *Younger* requirements are also satisfied. Although we agree that a *state*'s interest in having its executive branch enforce such measures is sufficiently important for *Younger* purposes, we conclude that a *private* litigant's interest in seeing such measures enforced, which is all we have here, does not implicate the principles of comity and federalism with which *Younger* and its progeny are concerned.

## I.   Basic *Younger* Principles

**[1]** Although *Younger* itself held that, absent extraordinary circumstances, a federal court may not interfere with a pending state criminal prosecution, 401 U.S. at 54, the Supreme Court has extended *Younger* abstention to the civil context on numerous occasions. In *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), the Supreme Court laid out a three-part test for determining when to apply *Younger* to a civil proceeding, holding that abstention is required so long as the state proceedings: (1) are ongoing; (2) implicate "important state interests"; and (3) provide an

adequate opportunity to raise federal questions. 457 U.S. at 432. To these three threshold requirements, we recently articulated an implied fourth requirement that (4) the federal court action would " 'enjoin the proceeding, or have the practical effect of doing so.' " *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148-49 (9th Cir. 2007) (quoting *Gilbertson*, 381 F.3d at 978).

**[2]** The case now before us is an unprecedented candidate for *Younger* abstention and provides us a much-needed opportunity to clarify the scope of what constitutes an "important state interest." Though recognizing "important state interests" in a wide variety of civil proceedings, neither we nor the Supreme Court has held *Younger* to apply generally to ordinary civil litigation. *See Middlesex*, 457 U.S. at 432 (extending *Younger* to noncriminal judicial proceedings only "when important state interests are involved"); *Miofsky v. Superior Court of the State of Cal.*, 703 F.2d 332, 338 & n.9 (9th Cir. 1983) (declining to extend *Younger* to encompass "conventional civil litigation"). To the contrary, abstention remains an extraordinary and narrow exception to the general rule that federal courts " 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' " *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358 (1989) ("*NOPSI*") (quoting *Cohens v. Va.*, 6 Wheat. 264, 404 (1821)); *see Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959); *Gilbertson*, 381 F.3d at 969 n.2. Consequently, each time we are asked to extend *Younger* to a new type of state civil proceeding, we must determine whether federal adjudication would offend the doctrine's animating principles, foremost of which is

> the notion of 'comity,' that is, *a proper respect for state functions*, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the

> *States and their institutions are left free to perform their separate functions in their separate ways* . . . . [T]he concept [represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that *will not unduly interfere with the legitimate activities of the States*.

*Younger*, 401 U.S. at 44 (emphases added); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987).

The key to determining whether comity concerns are implicated in an ongoing state proceeding — and thus whether the second *Younger* requirement is met — is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions. Unless interests "vital to the operation of state government" are at stake, federal district courts must fulfill their "unflagging obligation" to exercise the jurisdiction given them. *Miofsky*, 703 F.2d at 337, 338 (internal quotation marks omitted); *accord Polykoff; IAS, Inc. v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987).

## II.  Whether This Case Implicates Vital State Functions

Here, the first and third threshold *Younger* requirements appear easily satisfied. Potrero Hills concedes it was not prevented from raising its constitutional argument in state court, and state judicial proceedings were indisputably "ongoing" at the time Potrero Hills filed this federal action.[7] We conclude,

---

[7]Potrero Hills does not dispute that the state mandamus proceedings were already underway when it filed this § 1983 action but nonetheless insists that *Younger* abstention applies only to ongoing proceedings initi-

however, that the state mandamus actions do not implicate any important state interests vital to the operation of state government. Because the second requirement is not satisfied, dismissal based on *Younger* abstention was not required here.[8]

## A.   No Vital Executive Interests

### 1.   The State is Not in an Enforcement Posture

[3] The *Younger* doctrine recognizes that a state's ability to enforce its laws " 'against socially harmful conduct that the State believes in good faith to be punishable under its laws and Constitution' " is a "basic state function" with which federal courts should not interfere. *Miofsky*, 703 F.2d at 336 (quoting *Younger*, 401 U.S. at 51-52). Where the state is in an

---

ated by the state. This argument confuses the inquiries under prongs one and two, as our case law clearly demonstrates that the first *Younger* prong may be satisfied even when the ongoing state proceeding involves only private litigants. *See, e.g.*, *Pennzoil*, 481 U.S. at 12-14; *Juidice v. Vail*, 430 U.S. 327, 335-36 (1977); *AmerisourceBergen*, 495 F.3d at 1149 (ultimately finding abstention improper due to lack of important state interests but finding the first element satisfied in a private contract dispute). The significance of the lack of a state-initiated enforcement proceeding is more appropriately considered under the second *Younger* prong.

[8]We need not discuss the fourth component of *Younger* abstention, for only if all three threshold *Middlesex* requirements are satisfied do we then consider whether the federal action would unduly interfere with the state proceeding " 'in a way that *Younger* disapproves.' " *AmerisourceBergen*, 495 F.3d at 1149 (quoting *Gilbertson*, 381 F.3d at 978)). If the state actions are not the type of proceeding to which *Younger* applies, then the preclusive effect of any federal court ruling on the parallel proceeding by virtue of res judicata or collateral estoppel is irrelevant for abstention purposes. *See id.* at 1151. Where concerns of comity are absent, "the 'mere potential for conflict in the results of adjudications' is not the kind of 'interference' that merits federal court abstention. Rather, the possibility of a race to judgment is inherent in a system of dual sovereigns." *Green*, 255 F.3d at 1097 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976)); *accord AmerisourceBergen*, 495 F.3d at 1151.

enforcement posture in the state proceedings, the "important state interest" requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake.[9] *See Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986) ("The state's interest in a civil proceeding is readily apparent when the state through one of its agencies acts essentially as a prosecutor." (internal quotation marks and alterations omitted)); *see also Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (emphasizing that the state brought suit in its sovereign capacity). Thus, when the state seeks to enforce a law of significant state importance through judicial or quasi-judicial action, we have found abstention necessary to protect the state's unique interest in exercising its basic executive functions in a wide range of civil contexts. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986) (recognizing state's important interest in enforcing its employment anti-discrimination laws through administrative proceedings); *Moore v. Sims*, 442 U.S. 415, 435 (1979) (same for enforcing child custody laws); *Trainor*, 431 U.S. at 444 (enforcing state welfare scheme); *San Jose Silicon Valley*

---

[9]This presumption is overcome only under extraordinary circumstances, such as where (1) the "state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *see Younger*, 401 U.S. at 47-49; (2) the challenged provision is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' " *Younger*, 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)); (3) the state forum is "incompetent by reason of bias," *Hirsh v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995) (citing *Gibson v. Berryhill*, 411 U.S. 564, 577-79 (1973)); or (4) when federal preemption of a state law is "readily apparent," *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1272-73 (9th Cir. 1994) (explaining that when state law is "clearly preempt[ed]" by federal law, "there is 'no principle of comity or of "our federalism' " that abstention would serve" (quoting *Fresh Int'l*, 805 F.2d at 1361 n.11)); *accord Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408-09 (9th Cir. 1984) (finding no significant state interest at stake where state law was clearly preempted by ERISA).

*Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1094 (9th Cir. 2008) (enforcing local election regulations); *Gilbertson*, 381 F.3d at 983 (enforcing land-surveying licensing provisions); *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003) (enforcing horse-racing licensing procedures); *Woodfeathers, Inc. v. Washington Cnty., Or.*, 180 F.3d 1017, 1021 (9th Cir. 1999) (enforcing solid waste disposal and recycling ordinance); *San Remo Hotel v. City and Cnty. of S.F.*, 145 F.3d 1095, 1104 (9th Cir. 1998) (enforcing land-use and zoning ordinances); *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987) (enforcing nuisance laws); *Worldwide Church of God, Inc. v. State of Cal.*, 623 F.2d 613, 616 (9th Cir. 1980) (per curiam) (investigating charitable trust fraud pursuant to state Attorney General's supervisory authority).

**[4]** Here, the district court identified two state interests it thought sufficiently "important" to warrant abstention: first, the state's interest in enforcing its ballot initiatives, and second, the state's interest in enforcing its local solid waste ordinances. However, as we explained above, it is not the bare subject matter of the underlying state law that we test to determine whether the state proceeding implicates an "important state interest" for *Younger* purposes. Were that so, then any ordinary civil litigation between private parties requiring the interpretation of state law would pass *Younger* muster. Rather, the content of state laws becomes "important" for *Younger* purposes only when coupled with the state executive's interest in enforcing such laws. Had Solano County enforced Measure E against Potrero Hills and denied it the revised Use Permit, no doubt the second *Younger* requirement would be satisfied. *See Woodfeathers*, 180 F.3d at 1021 ("[T]he *County's* enforcement of its solid waste ordinance implicates important state interests for the purpose of *Younger v. Harris*." (emphasis added)). But here, "the [County] simply was not in any type of enforcement posture against [Potrero Hills] at the time [Potrero Hills] filed the federal action attacking the constitu-

tionality of the legislative enactment." *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 791 (6th Cir. 2004). Accordingly, the state's vital executive functions would not be unduly hampered by a federal court's adjudication of Potrero Hills' claim.

### 2.    Private Citizens Lack Executive Powers

**[5]** Intervenors nonetheless assert that the state mandamus actions, though initiated by private citizen groups rather than by the state, qualify equally as "enforcement proceedings" for *Younger* purposes. We find no support in the law for this argument. The California Constitution reserves to the people certain legislative powers, *see* Cal. Const. art. II, §§ 8-11; *id.* art. IV, § 1, and the California Supreme Court is currently considering whether the official proponents of initiative measures possess legal interests in upholding the constitutionality of such measures when the executive officials vested with the authority to do so refuse to exercise their authority. *See Perry v. Schwarzenegger*, 628 F.3d 1191, 1193 (9th Cir. 2011); *Perry v. Brown*, No.S189476 (Cal. Feb. 16, 2011) (granting our request for certification). But Intervenors do not claim to be the official proponents of Measure E, and private citizens as a general matter lack executive authority to enforce state laws, whether enacted by initiative or by the legislature. *See, e.g.*, Cal. Const. art. V, § 1 ("The supreme executive power of this State is vested in the Governor."). Private parties who are aggrieved by the Executive's failure to enforce a legislative initiative or any other state law may be able to bring a mandamus action against the Executive in state court, but such actions are neither sovereign in nature nor the exercise of the executive authority of the state. Intervenors cite no authority that instructs us to treat their mandamus actions as the equivalent of a state-initiated enforcement proceeding.

**[6]** At the time Potrero Hills filed this suit, it was not the subject of any past or pending state-initiated enforcement proceeding; rather, Intervenors' state mandamus actions made it

the subject merely of *prospective* enforcement, where *Younger* does not apply. *See Wooley v. Maynard*, 430 U.S. 705, 711-12 (1977) (no *Younger* bar to federal injunctive relief in the face of threatened repeated prospective state prosecution); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (no *Younger* bar to federal declaratory relief when state proceedings are not pending but only threatened); *Wiener v. Cnty. of San Diego*, 23 F.3d 263, 267 (9th Cir. 1994); *Exec. Arts Studio*, 391 F.3d at 791-92. Where a federal plaintiff seeks relief not from past state actions but merely from prospective enforcement of state law, federal court adjudication would not interfere with the state's basic executive functions in a way *Younger* disapproves. *See Wooley*, 430 U.S. at 709-11; *Wiener*, 23 F.3d at 267. While a state's executive interest in enforcing a local waste management ordinance would no doubt qualify as abstention-worthy, private citizens generally lack executive authority, and thus their efforts to enforce a local waste management ordinance do not implicate the comity and federalism concerns that justify a federal court's extraordinary act of abstaining from hearing a case over which it has jurisdiction. To hold otherwise would threaten to "permit the exception to consume the rule." *Miofsky*, 703 F.2d 332.

## B.   No Other Vital State Functions Implicated

Although no vital executive state functions are at stake, Intervenors urge us to recognize two additional comity concerns and to affirm the district court's decision to abstain based on (1) the state judiciary's interest in adjudicating federal constitutional claims and enforcing ballot initiatives, and (2) the sovereign voters' interest in exercising their right to legislate. Although the state's important interest in protecting its executive functions is by no means its only abstention-worthy one, Intervenors fail to identify how federal court adjudication of this suit would unduly interfere with the state's ability to perform its vital judicial or legislative functions.

### 1.  No Vital Judicial Interests

**[7]** To establish a vital interest in the state's judicial functions, an abstention proponent must assert more than a state's generic interest in the resolution of an individual case or in the enforcement of a single state court judgment. *See Champion Int'l*, 731 F.2d at 1408. Likewise, a state's interest in a universal judicial value such as "prompt resolution of cases" is not cognizable for purposes of *Younger* abstention. *See AmerisourceBergen*, 495 F.3d at 1150. Rather, the interest at stake must go to "the core of the administration of a State's judicial system," *Juidice v. Vail*, 430 U.S. 327, 335 (1977), and its importance must be " 'measured by considering its significance broadly,' " *AmerisourceBergen*, 495 F.3d at 1150 (quoting *Baffert*, 332 F.3d at 618). For example, in both *Juidice* and *Pennzoil*, the federal plaintiffs brought challenges to the very processes by which the state sought to compel compliance with the judgments of its courts, implicating the state's "wholesale interest in preserving its procedure for posting an appeal bond" or in enforcing the orders and judgments of its courts through the contempt process. *AmerisourceBergen*, 495 F.3d at 1150; *see Pennzoil*, 481 U.S. at 12-14; *Juidice*, 430 U.S. at 335-36 & n.12. Under such circumstances, "[n]ot only would federal injunctions . . . interfere with the execution of state judgments, but they would do so on grounds that challenge *the very process by which those judgments were obtained*." *Pennzoil*, 481 U.S. at 14 (emphasis added); *see Polykoff*, 816 F.2d at 1333.

Intervenors identify no comparable interest here in the state judiciary's vital functions, asserting instead only general judicial interests, such as the California state judiciary's interest in "providing a forum competent to vindicate any constitutional objections" to state laws. Equally unavailing is their assertion of the state's "important interest" in having its courts issue writs of mandate to enforce voter initiatives. Though it may be a "duty of the courts to jealously guard [the initiative] right of the people" under California law, *Bldg.*

*Indus. Ass'n of S. Cal. v. City of Camarillo*, 718 P.2d 68, 74 (Cal. 1986), the same can be said for a state court's duty to defend the federal Constitution, *see Zwickler v. Koota*, 389 U.S. 241, 248 (1967) (explaining that a federal court's duty "to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims" cannot be avoided "merely because state courts also have the solemn responsibility, equally with the federal courts, to guard, enforce, and protect every right granted or secured by the constitution of the United States" (internal quotation marks and alterations omitted)). This type of generalized interest does not fall within the scope of vital interests central to the state courts' functions recognized under *Younger*. *See NOPSI*, 491 U.S. at 372-73; *Polykoff*, 816 F.2d at 1333 (abstention unwarranted where state action brought by county attorney seeks only declaratory judgment on the same federal issue as that involved in the federal action).

**[8]** To assert a vital state interest concerning the state judiciary, Intervenors must do more than assert a general interest in the grant and enforcement of *this* writ of mandamus. Potrero Hills' suit challenges neither the authority of state courts to issue such writs nor processes for their enforcement once issued, and thus Intervenors have failed to establish that a federal court's adjudication of this case would unduly interfere with the state's vital interest in "protecting 'the authority of [the state's] judicial system, so that its orders and judgments are not rendered nugatory.' " *Pennzoil*, 481 U.S. at 14 n.12 (quoting *Juidice*, 430 U.S. at 336 n.12).

### 2.  No Vital Legislative Interests

Finally, Intervenors assert *Younger* abstention's concern for comity should also recognize an important state interest in protecting the state's initiative process and the sovereign powers of Solano County voters. *See* Cal. Const. art. IV, § 1 (reserving to the people of California "the powers of initiative and referendum"); Cal. Elec. Code § 9122 ("If a majority of

the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the county."). Although we are unaware of any cases where *Younger* abstention has been found appropriate based on the state's important interest in protecting its legislative, as opposed to executive or judicial, functions,[10] we do not rule out the possibility that the *Younger* doctrine's principles could be extended to recognize such important state interests, should they in fact be implicated. *See Mervynne v. Acker*, 189 Cal. App. 2d 558, 563 (1961) (describing the exercise of initiative and referendum as "one of the most precious rights of our democratic process"); *cf. NOPSI*, 491 U.S. at 372 (explaining that the Court is "as concerned . . . to preserve the integrity of a unitary and still-to-be-completed legislative process as [it is] . . . to preserve the integrity of judicial proceedings").

[9] Nonetheless, the power of voters to legislate through the initiative process simply is not implicated here. This case does not, for example, challenge the right of voters to initiate legislation or the processes by which ballot initiatives become law. And as noted earlier, Intervenors do not claim to be the official proponents of Measure E; even assuming that under certain circumstances such official proponents possess interests under state law in defending the validity of the initiatives they sponsor, Intervenors assert no such interests here. This case therefore does not implicate a state's central legislative functions any more than does a suit challenging the constitutionality of a state law passed by the legislature. *See NOPSI*, 491 U.S. at 372 ("As a challenge to completed legislative action, NOPSI's suit . . . is, insofar as our policies of federal

---

[10]Although Intervenors cite *San Jose Silicon Valley*, 546 F.3d at 1094, for the proposition that enforcement of voter-enacted initiatives is an "important state interest," the asserted state interest there was, again, the executive interest in enforcing "regulation of local elections." That the particular measure the city sought to enforce was enacted by ballot initiative was not central to the finding of an important state interest.

comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance—which we would assuredly not require to be brought in state courts.").

## C.  No Additional Comity Concerns

[10] Finally, that Solano County itself opposed abstention and sought federal adjudication of Potrero Hills' claim further allays any concerns of offending comity. Abstention is not a jurisdictional doctrine but rather a prudential one, allowing a federal court to refuse to abstain where the state defendant consents to federal jurisdiction. Although the Ninth Circuit has not always deferred to a city's request for federal adjudication, *see, e.g.*, *San Remo Hotel*, 145 F.3d at 1104 (abstaining despite joint stipulation of the parties to stay state proceedings pending resolution of the federal action), a state's voluntary submission to a federal forum eliminates the comity and federalism concerns animating the *Younger* doctrine, and the federal court need not "force the case back into the State's own system." *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 480 (1977) ("*Younger* principles . . . do not require this Court to refuse Ohio the immediate adjudication it seeks."); *see also Dayton Christian Schs.*, 477 U.S. at 626 ("A state may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for [*Younger*] abstention."); *Brown v. Hotel and Rest. Emps. and Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n.9 (1984); *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 394 (9th Cir. 1995). Here, not only were no important state interests of the kind recognized by *Younger* at stake, but the County—and the State of California, as amicus —expressly asked the federal court to exercise its jurisdiction to resolve this solitary question of federal constitutionality. Under these circumstances, we find *Younger* abstention particularly unwarranted.[11]

---

[11]Because we hold that the second element of *Younger* is not satisfied, we need not consider Potrero Hills' additional argument that abstention denied federal plaintiffs not party to the state action their day in court.

### III.  *Pullman* **Abstention**

Intervenors alternatively urge us to determine that the district court should have abstained under *Pullman*.**¹²** *See Pullman*, 312 U.S. at 500-01. Though the various abstention doctrines "are not rigid pigeonholes into which federal courts must try to fit cases," *Pennzoil*, 481 U.S. at 11 n.9, *Pullman* abstention serves somewhat different objectives from *Younger* and may be appropriate even when *Younger* is not.

*Pullman* generally is available only where three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *Spoklie v. Mont.*, 411 F.3d 1051, 1055 (9th Cir. 2005) (citing *San Remo Hotel*, 145 F.3d at 1104); *see also Smelt v. Cnty. of Orange*, 447 F.3d 673, 679 (9th Cir. 2006).

**[11]** Thus, whereas *Younger* abstention aims to avoid interference with a state's vital functions, *Pullman* defers to state court interpretations of state law, not only out of concern for comity, but also to avoid " 'premature constitutional adjudication' " that would arise from "interpreting state law without the benefit of an authoritative construction by state courts." *Gilbertson*, 381 F.3d at 971 n.6 (internal quotation marks omitted); *see also Pennzoil*, 481 U.S. at 11 (observing that "[w]hen federal courts interpret state statutes in a way that raises constitutional questions, 'a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essen-

---

**¹²**Even if we were to agree with the Intervenors that *Pullman* abstention was warranted, we would not be able to affirm the district court's dismissal on that basis but rather would be required to reverse and remand with instructions to enter a stay under *Pullman* pending resolution of the state law issues in state court. *See San Remo Hotel*, 145 F.3d at 1105 n.6.

tially rendering the federal-court decision advisory and the litigation underlying it meaningless' " (quoting *Moore*, 442 U.S. at 428)).

Certification of state law questions to California's highest court serves the same function, allowing federal courts to avoid erroneously "deciding state-law questions antecedent to federal constitutional issues." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 75 (1997); *accord Doyle v. City of Medford*, 565 F.3d 536, 543-44 (9th Cir. 2006) (seeking certification of a state law question in a "*Pullman*-type abstention" situation); *cf.* Cal. R. Ct. 8.548(b)(2), (f)(5).

Unlike *Younger*, which requires dismissal of the federal action where all four conditions are met, *Pullman* is a discretionary doctrine that flows from the court's equity powers. *See Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) (" '[*Pullman* abstention] is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers."); *accord Smelt*, 447 F.3d at 678 (reviewing decision to abstain under *Pullman* under a modified abuse of discretion standard). But because the court below did not reach Intervenors' *Pullman* argument, we have no exercise of discretion to review.

**[12]** Here, the absence of a definitive state court interpretation of Measure E could raise *Pullman* concerns, particularly because Intervenors urge an interpretation of Measure E applying the waste-import restrictions only to other California counties but not to other states.[13] That said, however, where

---

[13]Even assuming the interpretation urged by Intervenors is a permissible one under California rules of construction, such an interpretation might not obviate the Commerce Clause question, though it would admittedly change the contours of the inquiry. *Cf. Fort Gratiot*, 504 U.S. at 355; *BFI Med. Waste Sys. v. Whatcom Cnty.*, 983 F.2d 911 (9th Cir. 1992); *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348 (4th Cir. 2005); *but see On*

there is "no apparent saving construction" on the face of the state law, abstention is unwarranted. *Bd. of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987); *see also Wisc. v. Constantineau*, 400 U.S. 433, 439 (1971). Federal courts are not required to send a case to the state court if doing so would simply "impose expense and long delay upon the litigants without hope of its bearing fruit," *Zwickler*, 389 U.S. at 251; to the contrary, under such circumstances, "it is the duty of a federal court to decide the federal question when presented to it," *id.* Rather than consider *Pullman* abstention de novo, we instead remand for the district court to exercise its discretionary powers and determine in the first instance whether *Pullman* abstention is appropriate under the circumstances presented.

## CONCLUSION

Mindful that a federal court's obligation to exercise its jurisdiction is " 'particularly weighty' " when the federal plaintiffs before it seek relief under 42 U.S.C. § 1983 for violation of their civil rights, *Miofsky*, 703 F.2d at 338 (quoting *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1980)), we decline to expand the "extraordinary and narrow exception" created by *Younger* and its progeny to the circumstances presented here, *id.* (quoting *Frank Mashuda*, 360 U.S. at 188). Because the state mandamus actions brought by private interest groups did not involve any *uniquely* state interests in protecting the state's vital executive, judicial, or legislative functions, *Younger* abstention was not available and did not excuse the district court from its duty to adjudicate this federal constitutional claim. We therefore vacate and remand for

---

*the Green Apartments LLC v. City of Tacoma*, 241 F.3d 1235, 1241-42 (9th Cir. 2001) (municipal ordinance requiring all waste generated within the city to be deposited at the city's public disposal area did not implicate Commerce Clause concerns where plaintiff alleged only intrastate burdens).

the district court to consider Intervenors' alternative grounds for dismissal, including *Pullman* abstention, in the first instance.

**VACATED and REMANDED.** Each party shall bear its own costs on appeal.